## GRANDISON v. NATIONAL BANK OF COMMERCE OF ROCHESTER.

### (District Court, W. D. New York. February 15, 1915.)

**1. BANKRUPTCY ⊂⇒303—ACTIONS—PREFERENCES—EVIDENCE OF INSOLVENCY—BOOKS.**

In a suit by a trustee in bankruptcy to recover alleged preferential payments, the books and papers of the bankrupt were admissible to show the bankrupt's insolvency at the time of the payments.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. ⊂⇒303.]

**2. BANKRUPTCY ⊂⇒166—PREFERENCE—KNOWLEDGE THAT PREFERENCE WILL RESULT.**

Where a bank, to whom an insolvent corporation was indebted, had pressed for payment and had protested for nonpayment a number of notes and a draft against the corporation, which were not renewed for several weeks, it had reasonable cause to believe that it was receiving a preference when payments were made upon the indebtedness to it, especially where the president of the bank was familiar with various of the details of the corporation, knew of the difficulties encountered in making its collections and of a threat on that account to wind up its affairs, and knew that in the fall, about the time the payments were made, it was merely selling the cider and vinegar remaining from previous years, without grinding apples as it customarily did at that season, and was aware of discord between the corporation's president and certain of the directors, and of his resignation, at which time it suggested a friendly director to fill a vacancy on the board, which suggestion was adopted.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. ⊂⇒166.]

**3. BANKRUPTCY ⊂⇒165—PREFERENCES—TRANSFERS AND PAYMENTS CONSTITUTING.**

Where an assignment of accounts by a bankrupt to an indorser on its notes and the subsequent collection of the accounts were for the benefit of the holder of the notes, the transfer was a preference, within the prohibition of Bankr. Act July 1, 1898, c. 541, 30 Stat. 544; it not being necessary that the assignment should be directly to the holder.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. ⊂⇒165.]

**4. BANKRUPTCY ⊂⇒165—INSOLVENCY—PREFERENCES TO CREDITORS.**

Where an assignment of accounts by an insolvent corporation to an indorser on its notes was made for the benefit and advantage of the holder of the notes, such holder received a voidable preference under Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 66, forbidding conveyances or payments by corporations when insolvent, or when insolvency is imminent, with the intent of giving a preference to a particular creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. ⊂⇒165.]

In Equity. Suit by Wilbur B. Grandison, as trustee of the O. L. Gregory Vinegar Company, bankrupt, against the National Bank of Commerce of Rochester. Decree for plaintiff.

Thomas C. Burke, of Buffalo, N. Y. (Henry W. Pottle, of Buffalo, N. Y., of counsel), for complainant.

James M. E. O'Grady, of Rochester, N. Y., for defendant.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HAZEL, District Judge. This action was brought by the trustee in bankruptcy of the O. L. Gregory Vinegar Company, adjudicated a bankrupt March 4, 1910, on an involuntary petition filed by creditors February 15, 1910, against the National Bank of Commerce of Rochester under section 60b of the Bankruptcy Act of July 1, 1898 (30 Stat. 562, c. 541 [U. S. Comp. St. 1913, § 9644]), prior to the amendment of 1910, to recover preferential payments alleged to have been made by the bankrupt while insolvent at different times following October 15, 1909, or within four months of the filing of the petition in bankruptcy; and under sections 67e and 70e of the Bankruptcy Act to recover preferences alleged to be contrary to section 66 of the Stock Corporation Law of the state of New York.

[1] The only questions deemed by me necessary to be passed upon and decided in the action under section 60b of the Bankruptcy Act are: (1) Whether the bankrupt was insolvent, within the meaning of the Bankruptcy Act, at the times specified in the bill, when the claimed preferential payments were made to the bank; (2) whether the bank had reasonable cause at such times to believe that a preference was intended; and (3) whether this court has jurisdiction of the subject-matter and of the person of the defendant. Although the insolvency of the bankrupt at the times specified was earnestly contested, the evidence in its entirety leaves no doubt in my mind that such financial condition prevailed. The findings of fact submitted by counsel for complainant, and filed herewith, relieve me from the necessity of reciting the details establishing the insolvency. The books and papers of the bankrupt were properly received as evidence in support of the claim. Ernst v. Mechanics' & Metals National Bank of New York (D. C.) 200 Fed. 295.

[2] The familiarity of the president of the bank with various of the details of the business of the O. L. Gregory Vinegar Company, to which further reference will hereinafter be made, is thought to support the claim that the bank had reasonable cause to believe that it was receiving a preference at the time the promissory notes and drafts in question were paid. The evidence fairly indicates that the bank was apprised that the bankrupt was in straitened circumstances on October 15, 1909. The information possessed by the witness Swanton, the president of the bank, regarding the affairs of the bankrupt and its financial condition, was of such character as to put him on reasonable inquiry when the renewal notes held by the bank were paid by Alexander, the president of the bankrupt, who, as the evidence discloses, had indorsed such notes at the request of the bank, and who in consideration of such indorsement subsequently received as collateral security assignments of accounts receivable. The evidence shows that the bank had pressed for payment of the indebtednesses, and that discounted notes, 10 in number, and a draft deposited with the defendant, had been protested for nonpayment subsequent to October 15, 1909, and were not renewed until the expiration of several weeks from the time they were protested.

It has been held that where a creditor has repeatedly pressed for payment of his accounts, and checks previously given by the debtor have been dishonored, sufficient notice of the insolvency of his debtor

has been given the creditor. Pittsburg Plate Glass Co. v. Edwards, 148 Fed. 377, 78 C. C. A. 191; Conners v. Bucksport Nat. Bank (D. C.) 214 Fed. 847. While the cases cited are concerned with protested checks, and make no reference to protested notes, still it seems to me that, where many promissory notes amounting to a relatively large amount of money have been discounted and protested for nonpayment at maturity, cause is given to the holder of such notes to inquire into the financial condition of the debtor before he accepts payment in full to the exclusion of other creditors of the same class. If the bank had made inquiry, it would have known of the insolvency or its imminence at the time the resolution was adopted by the bankrupt assigning to its president the accounts receivable in consideration of his indorsement of the renewal notes.

But there was other evidence to charge the bank with notice of the imminent insolvency of the bankrupt, for example, its knowledge of the difficulties encountered by Alexander in making collections on his trip South, and his threat because of this to wind up the affairs of the company. The defendant also knew, for the knowledge of Mr. Swanton is imputable to it, that the bankrupt did not grind apples in the fall of 1909, as was customary at that season of the year, but merely sold the juice, or cider and vinegar, remaining over from previous years; and it was aware of the discord existing between Mr. Gregory, at that time president of the bankrupt, and certain of the directors, and of his subsequent resignation, at which time it suggested a friendly director to fill a vacancy on the board—a suggestion that was adopted by electing Mr. Dirnberger, the attorney for the defendant in the action brought by the trustee herein against Robertson to recover preferences. These matters, though perhaps not absolutely controlling, are nevertheless indicative of such close relationship between the bank and the bankrupt that it is inferable that the bank had reasonable cause to believe that its customer was insolvent, and that the payment of the notes in question was intended as a preference by which the bank should receive a greater percentage of its debt than was received by other creditors of the same class.

[3] To constitute a preference it was not necessary that the assignment of the accounts receivable should be made directly to the bank. It was enough that the transaction which resulted in the indorsement of the renewal notes and the subsequent collection of the accounts receivable were for the benefit of the bank. Alexander concededly received the assignment of accounts from the bankrupt to secure him as an indorser on the overdue promissory notes held by the defendant. Such a transfer made by an insolvent falls within the prohibition of the Bankruptcy Act. Crooks v. People's Nat. Bank, 46 App. Div. 335, 61 N. Y. Supp. 604. This principle is sustained by no less an authority than the Supreme Court of the United States in Newport Bank v. Herkimer Bank, 225 U. S. 178, 32 Sup. Ct. 633, 56 L. Ed. 1042. In that case Mr. Justice Hughes, who delivered the opinion of the court, said:

"To constitute a preference, it is not necessary that the transfer be made directly to the creditor. It may be made to another for his benefit. If the bankrupt has made a transfer of his property, the effect of which is to enable

one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it. * * * It is not the mere form or method of the transaction that the act condemns, but the appropriation by the insolvent debtor of a portion of his property to the payment of a creditor's claim, so that thereby the estate is depleted and the creditor obtains an advantage over other creditors."

It therefore makes no difference that the bankrupt paid the bank through the assignment to its president of the accounts receivable, as long as the arrangement resulted in disposing of the accounts receivable in such a way as to deplete the assets. The Bankruptcy Act does not forbid the taking of money by a bank in payment of a debt in the ordinary course of business, even if it should transpire that at the time of payment the debtor was insolvent; but in this case we are dealing with a different situation. Here, as said, the bank had reasonable cause to believe it was being favored, and nevertheless received payment of its debt, amounting to $15,216.90, by an arrangement made particularly for its benefit.

The trustee has, in my opinion, proven that preferential payments were made within four months of the filing of the petition, that the bankrupt was insolvent at the time of such payments, and that the effect of the payments was to give to the defendant a greater percentage of its debt than was received by other creditors of the same class, and that reasonable cause existed for belief by the defendant that it was intended to give him a preference.

The objection to the jurisdiction of the court is overruled on the authority of Gregory v. Atkinson (D. C.) 127 Fed. 183, and Parker v. Black (D. C.) 143 Fed. 560.

[4] I am of the opinion, also, that the preference complained of by the trustee was voidable under section 66 of the Stock Corporation Law of New York, inasmuch as it is shown that the assignments by the bankrupt and Alexander of the accounts receivable were really made for the benefit and advantage of the defendant bank. Section 67e of the Bankruptcy Act gives jurisdiction to this court concurrent with that of the state court to maintain an action to avoid transfers and preferences which are held null and void under the statutes of the state.

A decree may be entered, with costs, requiring a return of such preferences to the trustee, subject to dividends to which the defendant may be entitled on distribution of assets.