In the Matter of **STEEL STRUCTURES, INC., Bankrupt.**

**Bankruptcy No. 28387.**

United States District Court,
E. D. Tennessee, N. D.

Dec. 21, 1971.

Max M. Morrison, Knoxville, Tenn., for bankrupt.

Leon Steinberg, Knoxville, Tenn., for trustee.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This controversy between the Trustee, representing creditors of Steel Structures, Inc. (bankrupt), Detroit Gasket and Manufacturing Company (Gasket) and Star Manufacturing Company (Star) arises on account of a fourth mortgage given by the bankrupt to secure a loan evidenced by a note in the amount of $16,240.54 from Gasket and used by the bankrupt to pay an indebtedness to Star for building materials.

The materials were furnished by Star to the bankrupt for use in construction of a building for Gasket, the entire cost of the materials being approximately $18,045.04. The construction of the building was completed and Gasket paid Steel in full in December, 1969 or early January, 1970. On January 30, 1970, Star filed a notice of lien for materials and supplies furnished with the Register of Deeds in Cocke County, Tennessee. The notice of lien was filed against the property of Gasket. On April 30, 1970, a bill was filed by Star to enforce its claimed lien for materials and supplies. A writ of attachment was issued on April 30, 1970 and levied May 1, 1970. Gasket filed an answer denying the validity of the claimed lien. On July 29, 1970, the respective attorneys for Star and Gasket, Thomas S. Matthews, President of bankrupt, and Doyle Vaden, Vice President and Secretary of bankrupt,

met and worked out the following settlement:

"Steel Structures executed and delivered to Detroit Gasket a promissory note in the amount of $16,276.54 secured by a fourth mortgage on Steel Structures' real estate located in Knox County. Detroit Gasket delivered two checks to Steel Structures payable to Steel Structures and in the amounts of $16,240.54 and $36.00. The former check was endorsed by Steel Structures and delivered to Star together with a promissory note in the amount of $1,804.50 secured by a fifth mortgage on the Steel Structures, Knox County, real estate. The latter check was delivered to the Cocke County Chancery Court Clerk for payment of court costs of Star's Lienor's Bill filed in that court. Star executed a release of its claimed lien and all the parties approved for entry an agreed order of dismissal with full prejudice of the suit commenced by Star against Steel Structures and Detroit Gasket."

At the time the settlement was made, the bankrupt was insolvent and the bankrupt, Star and Gasket knew or had reasonable cause to believe that bankrupt was insolvent. As evidence of this fact, during May or June, 1970, the President and Vice President and Secretary of the bankrupt discussed the advisability of filing a petition in bankruptcy for the bankrupt with E. L. Hicks, certified public accountant of Knoxville. During the latter part of July or the first of August, 1970, Matthews and Vaden discussed the filing of a petition in bankruptcy for the bankrupt with Max M. Morrison, attorney in Knoxville.

The Referee in a definitive and exhaustive memorandum opinion held: (1) That the transfer to Gasket by the bankrupt on July 29, 1970 was void under Section 67d(3) and (6) of the Bankruptcy Act,[1] (2) That the transfer of $16,240.54 by bankrupt to Star on July 29, 1970 was a voidable preference under Section 60 of the Bankruptcy Act[2] to the extent fo $10,000.00, this being the amount of equity realized for the creditors from the liquidation of the property against which, as heretofore indicated,

1. "Sec. 67d(3)

"Every transfer made and every obligation incurred by a debtor who is or will thereby be rendered insolvent, within four months prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent, as to then existing and future creditors: (a) if made or incurred in contemplation of the filing of a petition initiating a proceeding under this Act by or against the debtor or in contemplation of liquidation of all or the greater portion of the debtor's property, with intent to use the consideration obtained for such transfer or obligation to enable any creditor of such debtor to obtain a greater percentage of his debt than some other creditor of the same class, and (b) if the transferee or obligee of such transfer or obligation, at the time of such transfer or obligation, knew or believed that the debtor intended to make such use of such consideration. The remedies of the trustee for the avoidance of such transfer or obligation and of any ensuing preference shall be cumulative: *Provided, however,* That the trustee shall be entitled to only one satisfaction with respect thereto."

"Sec. 67d(6)

"A transfer made or an obligation incurred by a debtor adjudged a bankrupt under this Act, which is fraudulent under this subdivision against creditors of such debtor having claims provable under this Act, shall be null and void against the trustee, except as to a bona fide purchaser, lienor, or obligee for a present fair equivalent value. . . ."

2. "Sec. 60

"a(1) A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

"b. Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent."

there were four mortgages. There was a fifth mortgage on the bankrupt property to secure an amount of $1,804.50 which is not material to the matters involved in this case. (3) That the bankrupt, Gasket and Star be returned to their status as of July 29, 1970. (4) That any claim hereafter filed by Gasket or Star as a result of the July 29, 1970 transaction be allowed as an unsecured claim against the bankrupt.

■ The record clearly shows that the bankrupt intended to use the $16,240.54 obtained from Gasket under the loan to pay Star for the materials furnished the bankrupt for the construction of a building. Both Star and Gasket knew that the funds were to be so used and knew or had reasonable cause to believe that at the time of the transaction involving the funds bankrupt was insolvent. Clearly, the transfer diminished assets of the bankrupt available for general creditors. Prior to the transaction Star was an unsecured creditor in the amount of $18,045.04. After the transaction, Star's unsecured indebtedness had been reduced by $16,240.54 and Gasket was a secured creditor in that amount. Star thereafter was also a secured creditor holding a fifth mortgage on the bankrupt's property in the amount of $1,804.50.

The sole purpose as found by the Referee of the transaction was to enable the bankrupt to pay Star an unsecured debt and all of the parties to the transaction knew this to be true. As evidence of the stated purpose, Gasket's check was not deposited in the bankrupt's account but was immediately endorsed over to Star and deposited to its own account. The Referee found that the transfer to Gasket on July 29, 1970 (the execution of the mortgage) was void under Section 67d(3) and (6) of the Bankruptcy Act and that the transfer to Star on July 29, 1970 (the payment of the $16,240.54) was a voidable preference under Section 60 of the Bankruptcy Act to the extent that the estate of the bankrupt was depleted. The Trustee ordered the sum of $10,000.00, the amount which would have been available to general creditors absent the July 29, 1970 transaction, be distributed to general creditors and that Gasket and Star be returned to their former status as of July 29, 1970 after their rights are determined in the lienor's suit, or, by agreement, Star or Gasket may file an amended unsecured claim against the bankrupt estate.

We have carefully examined the record, including the memorandum opinion, findings of fact and conclusions of law by the Referee, as well as various briefs filed by the respective parties, and fully concur in the results reached by the Referee. Since the Referee has written a 46-page opinion in which he made extensive findings of fact and conclusions of law (supported by citations of applicable cases) which are hereby adopted, another opinion by this Court is deemed unnecessary. Accordingly, the results reached by the Referee are concurred in by this Court and are affirmed.

■■ Mention should be made briefly of the motion of Star to receive additional evidence, explaining the terms of the alleged settlement of the lien secured against Gasket by Star in the Chancery Court of Cocke County, Tennessee, and evidence explaining why the agreed order dismissing the action was not entered upon the minutes of the Chancery Court. The proposed evidence would not change the conclusions of this Court and the motion must, therefore, be denied. The practice of permitting litigants to introduce evidence in this Court which was not introduced before the Referee should not be encouraged.