In the Matter of STEEL STRUCTURES,
INC., Bankrupt-Appellee,

v.

STAR MANUFACTURING COMPANY
and Detroit Gasket & Manufactur-
ing Co., Petitioners-Appellants.

Nos. 72–1171, 72–1172.

United States Court of Appeals,
Sixth Circuit.

Aug. 3, 1972.

Hugh W. Morgan, James A. Ridley, III, of Kramer, Dye, Greenwood, Johnson, Rayson & McVeigh, Knoxville, Tenn., James K. Giffen, of Fowler, Rowntree, Fowler & Robertson, Knoxville, Tenn., for appellants.

Issie L. Jenkins, Scott P. Crampton, M. Rothwacks, B. N. Hollander, of Dept. of Justice, Tax Division, Washington, D. C., John L. Bowers, Jr., U. S. Atty., Leon Steinberg, Trustee in Bankruptcy, Knoxville, Tenn., for appellees.

John A. Walker, Jr., Knoxville, Tenn., of Egerton, McAfee, Armistead, Davis & McCord, Knoxville, Tenn., for trustee.

Before PHILLIPS, Chief Judge, and TUTTLE* and O'SULLIVAN, Senior Circuit Judges.

PER CURIAM.

This is an appeal from the decision of the District Court, 346 F.Supp. 332, affirming an order of the Referee in Bankruptcy which set aside a transaction as a fraudulent conveyance and voidable preference. We affirm on the basis of the comprehensive memorandum of Referee Clive W. Bare, set forth as an Appendix hereto.

Star Manufacturing Company further appeals from the District Judge's refusal to receive additional evidence. The District Court found that "[t]he proposed evidence would not [have] change[d] [its] conclusions." We agree. Star has failed to show such abuse of discretion as would warrant overturning this decision.

Affirmed.

## APPENDIX

### MEMORANDUM, FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

#### I

This controversy over the execution of a fourth mortgage on the bankrupt's real property which is attacked by the trustee as a lien obtained by legal or equitable proceedings within four months of bankruptcy, void under Sec. 67a(1) of the Bankruptcy Act; and/or a fraudulent transfer under Sec. 67d(3) of the Act; and/or a voidable preference under Sec. 60a and b of the Act. A fifth mortgage executed by the bankrupt at the same time is pertinent only insofar as it pertains to the entire transaction involving the bankrupt; Star Manufacturing Company of Oklahoma; and Detroit Gasket and Manufacturing Company, as the funds realized by the trustee from the sale of the real property are sufficient only to pay the first three mortgages in full and $10,000.00 on the fourth mortgage or to general creditors, as the facts and law require. Facts which have either been stipulated by the parties or found by the court are as follows.

#### II

(1) Steel Structures, Inc. (hereafter Steel Structures or bankrupt), entered into a contract with Detroit Gasket and Manufacturing Company (hereafter Detroit Gasket) to construct a steel addi-

---

* Honorable Elbert Parr Tuttle, Senior Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

tion to an existing building belonging to Detroit Gasket in Newport, Tennessee. The contract was in the approximate amount of $27,000.00 and not bonded.

(2) Star Manufacturing Company of Oklahoma (hereafter Star) furnished materials for this construction to Steel Structures in the amount of $18,045.04.

(3) The contract was completed and Detroit Gasket paid Steel Structures in full in December, 1969, and/or January, 1970.

(4) On January 30, 1970, Star filed a Notice of Lien for materials and supplies furnished with the Register of Deeds, Cocke County, Tennessee. This notice of lien was filed against the property of Detroit Gasket.

(5) On April 30, 1970, Star filed an Original Lienor's Bill in the Chancery Court for Cocke County, Tennessee, naming as defendants Steel Structures and Detroit Gasket. This Bill was filed to enforce Star's claimed lien for materials and supplies as set forth in the Notice of Lien described above. A Writ of Attachment was issued April 30, 1970, and levied May 1, 1970.

(6) An agreed order was entered allowing Detroit Gasket until May 29, 1970, to answer or otherwise plead. On or about May 29, 1970, Detroit Gasket filed an Answer denying the validity of the claimed lien.

(7) On July 29, 1970, Hugh W. Morgan (an attorney representing Star), Thomas S. Matthews (President of Steel Structures), Doyle Vaden (Vice-President and Secretary of Steel Structures), John O. Threadgill (an attorney representing Steel Structures), and James K. Giffen (an attorney representing Detroit Gasket), assembled at the office of John O. Threadgill, and the Lienor's Bill filed by Star against Steel Structures and Detroit Gasket was settled on the following basis:

Steel Structures executed and delivered to Detroit Gasket a promissory note in the amount of $16,276.54 secured by a fourth mortgage on Steel Structures' real estate located in Knox County. Detroit Gasket delivered two checks to Steel Structures payable to Steel Structures and in the amounts of $16,240.54 and $36.00. The former check was endorsed by Steel Structures and delivered to Star together with a promissory note in the amount of $1,804.50 secured by a fifth mortgage on the Steel Structures, Knox County, real estate. The latter check was delivered to the Cocke County Chancery Court Clerk for payment of court costs of Star's Lienor's Bill filed in that court. Star executed a release of its claimed lien and all the parties approved for entry an agreed order of dismissal with full prejudice of the suit commenced by Star against Steel Structures and Detroit Gasket.

(8) On July 29, 1970, after the transaction referred to in paragraph (7), the assets and liabilities of Steel Structures were the same as set forth in its petition in bankruptcy filed on August 11, 1970. The summary of such debts and assets taken from Schedules A & B of such petition are as follows:

| | |
|---|---|
| Taxes due United States | $ 23,959.73 |
| Taxes due States | 1,630.73 |
| Secured claims | 48,287.04 |
| Unsecured claims | 107,185.17 |
| Accommodation Paper | 7,440.22 |
| Schedule A—Total | $188,502.89 |
| Real Estate | $ 35,000.00 |
| Stock in trade | 55,115.00 |
| Debts due on open accounts | 75,319.58 |
| Deposits of money in banks and elsewhere | 50.00 |
| Schedule B—Total | $165,484.58 |

(9) During May or June of 1970, Mr. Matthews, President of Steel Structures, and Doyle Vaden, Vice-President and Secretary of Steel Structures, discussed the advisability of filing a petition in bankruptcy on behalf of said corporation with E. L. Hicks, Certified Public Accountant of Knoxville, Tennessee. During the latter part of July or the first part of August, 1970, Messrs. Matthews and Vaden discussed the filing of a petition in bankruptcy for the corporation with Max M. Morrison, attorney of Knoxville, Tennessee. Mr. Morrison's petition for compensation at attorney for

the bankrupt filed September 3, 1970, reflects conferences with officers of the bankrupt commencing August 2 and ending August 10 when the petition and completed schedules were sworn to by Mr. Matthews.

## III

*Lien obtained by legal or equitable proceeding within four months before the filing of the bankruptcy petition.*

■■■ The trustee's first attack on the transaction in question is based on Sec. 67a(1) of the Bankruptcy Act which provides as follows:

> "Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this Act by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this Act."

The trustee cannot prevail under this section. No lien was obtained by legal or equitable process or proceedings against any property of the bankrupt. The Original Lienor's Bill filed by Star against Steel Structures and Detroit Gasket in the Chancery Court for Cocke County, Tennessee, sought to enforce a lien against property owned by Detroit Gasket—*not* by the bankrupt. Also, Sec. 67a(1) relates to and invalidates liens obtained by legal or equitable proceedings and not contractual liens. Such liens, however, may, of course, be invalidated if they constitute voidable preferences under Sec. 60 of the Act or fraudulent conveyances under Sec. 67d.

Collier summarizes the conditions that must be satisfied in order for the trustee to avoid a lien under Sec. 67a(1) as follows:

> "A lien obtained in or pursuant to judicial proceedings, to be voidable at the suit of the trustee or the debtor, as the case may be, must, however,

satisfy certain conditions: (1) it must attach the property of the bankrupt which passes to the trustee under Sec. 70a or is exempt under Sec. 6; (2) it must have been acquired within four months prior to the initiation of the bankruptcy proceedings; and (3) it must either have attached during the insolvency of the bankrupt, or it must have been sought and permitted in fraud of the provisions of the Act." Collier on Bankruptcy, 14th Ed., Vol. 4, Sec. 67.03, p. 66.

As heretofore stated, neither Star nor Detroit Gasket obtained a lien against the bankrupt's property in or pursuant to a judicial proceeding. The trustee's attack under Sec. 67a(1) therefore fails.

## IV

*Fraudulent transfer under Sec. 67d(3) of the Bankruptcy Act.*

Sec. 67d(3) enacts:

> "Every transfer made and every obligation incurred by a debtor who is or will thereby be rendered insolvent, within four months prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent, as to then existing and future creditors: (a) if made or incurred in contemplation of the filing of a petition initiating a proceeding under this Act by or against the debtor or in contemplation of liquidation of all or the greater portion of the debtor's property, with intent to use the consideration obtained for such transfer or obligation to enable any creditor of such debtor to obtain a greater percentage of his debt than some other creditor of the same class, and (b) if the transferee or obligee of such transfer or obligation, at the time of such transfer or obligation, knew or believed that the debtor intended to make such use of such consideration. The remedies of the trustee for the avoidance of such transfer or obligation and of any ensuing preference shall be cumulative: *Provided, however,* That

the trustee shall be entitled to only one satisfaction with respect thereto."

Sec. 67d(6) enacts:

"A transfer made or an obligation incurred by a debtor adjudged a bankrupt under this Act, which is fraudulent under this subdivision d against creditors of such debtor having claims provable under this Act, shall be null and void against the trustee, except as to a bona fide purchaser, lienor, or obligee for a present fair equivalent value . . ."

Sec. 67e of the Bankruptcy Act of 1898 enacted that all conveyances, transfers, assignments, or encumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt within four months prior to the filing of the bankruptcy petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against creditors except as to purchasers in good faith and for a present fair consideration. When subdivision (d) of Sec. 67 of the Bankruptcy Act was set up in the course of the 1938 revision, as a substitute for the former first sentence of Sec. 67e, Congress introduced as Paragraph (5) of Sec. 67(d) a provision making fraudulent transfers and obligations within four months of the filing of a bankruptcy petition, "made or incurred with intent to use the consideration . . . to effect a preference to a third person voidable under Sec. 60 of this Act." The purpose of this provision, according to the House Judiciary Committee Report, was to cure a conflict in court decisions. The Supreme Court in Dean v. Davis, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917), had held that a mortgage was void under Sec. 67e of the Act, as in fraud of creditors, where it was given to the debtor's brother-in-law to obtain funds to pay off the debtor's liability to a bank on forged documents, the debtor being hopelessly insolvent and the mortgagee fully aware of all the facts. Remington on Bankruptcy, Vol. 4, Sec. 1647, p. 149. Remington goes on to say that thereafter some of the lower courts reached the same result, that some went even further, but that others reached a contrary result. Remington, Vol. 4, pp. 150 and 151.

The 1938 version of Sec. 67d(3) was amended in 1952. Again quoting Remington—

"The 1938 version of Sec. 67(d)(3) was subjected to two criticisms: (1) it went considerably beyond the Supreme Court's decision in Dean v. Davis and, as phrased, extended to any case where an insolvent debtor borrowed money on security intending to use the security to pay off unsecured creditors; (2) it limited its application to instances where the intent was to effect preferences voidable under Sec. 60. In connection with proposed revision of this paragraph by the Act of July 7, 1952, the Report of the House Judiciary Committee recognizes the force of these criticisms. With respect to the latter, it says that 'If anything, the estate needs greater protection in a case where the preference is not voidable [under Sec. 60], since the need for pursuing the auxiliary transaction is more acute where the preferred creditor is invulnerable.'" Remington, Vol. 4, p. 152.

To meet these objections and to provide a more accurate statutory embodiment of Dean v. Davis, the present language of Sec. 62d(3) (sic) was enacted.

Collier on Bankruptcy, 14th Ed., Vol. 4, Sec. 67.38, p. 545, states that 67d(3), as amended in 1952, "is designed to coordinate with Secs. 60 and 67a(1)(b) in codifying the rule of Dean v. Davis."

To reach a determination of the issues involved in the present controversy, the actual situation that existed on July 29, 1970, must be scrutinized. Steel Structures, in the latter part of 1969, completed the construction of an addition to an existing building on Detroit Gasket's property. Detroit Gasket paid Steel Structures approximately $27,000.00 in full for this work. Steel Structures, while constructing this building, had purchased materials for such construc-

tion from Star. Steel Structures did not pay Star for these materials. Star's materials' claim amounted to $18,045.04. On January 30, 1970, Star filed notice of lien and on April 30, 1970, filed a lienor's bill against Detroit Gasket's property. A Writ of Attachment was issued April 30, 1970, and levied May 1, 1970. Tennessee Code Annotated 64–1101 et seq. An agreed order was entered allowing Detroit Gasket until May 29, 1970, to answer or otherwise plead. On May 28, 1970, Detroit Gasket filed an answer denying the validity of the claimed lien. Steel Structures did not answer. Steel Structures did not have the money to satisfy the lien claim. On July 29, 1970, Detroit Gasket advanced Steel Structures $16,276.54 to pay Star 90 per cent of its debt so that the asserted lien would be released. To secure this advance, Detroit Gasket took a fourth mortgage on Steel Structures' property. As this advance did not pay Star in full, it took a fifth mortgage on Steel Structures' property in the amount of $1,804.50 for the balance due on the Detroit Gasket job.

The parties agree that for the trustee to prevail under Sec. 67d(3) he must allege and prove the following:

(1) That the debtor has made a transfer of his property or incurred an obligation;

(2) That the debtor was insolvent at the time or as a result of the transfer or obligation;

(3) That the transfer or obligation became effective within four months of the filing of the petition initiating a proceeding under the Bankruptcy Act;

(4) That the transaction must have been entered into in contemplation of the filing of such a petition or in contemplation of liquidation of all or the greater portion of the debtor's property;

(5) That the transaction must have been entered into with the intent to use the consideration obtained to enable a creditor of the debtor to obtain a greater percentage of his debt than some other creditor of the same class;

(6) That the transferee or obligee must, at the time of the transaction, know or believe that the debtor intends to make such use of the consideration.

See generally Collier, 14th Ed., Vol. 4, Sec. 67.38.

From the stipulated facts, the parties also agree that the bankrupt made a transfer of property (Element (1) above); that the bankrupt was insolvent at that time (Element (2) above); and that such transfer was effective within four months of bankruptcy (Element (3) above). This leaves for consideration by the court Elements (4), (5), and (6).

■ At the outset, it appears appropriate to point out that, for the trustee to avoid the transfer in question under Sec. 67d(3) of the Bankruptcy Act, a finding of "fraudulent intent" is not required, nor is the question of "fair consideration" or "good faith" involved. Stripped to its essential elements, this court's decision under Sec. 67d(3) must be based on findings of whether (1) the transaction was entered into in contemplation of the bankrupt's filing of a bankruptcy petition; (2) with the intent to use the consideration obtained to enable a creditor (Star) to obtain a greater percentage of its debt than some other creditor of the same class; and (3) Detroit Gasket's knowledge or belief that Steel Structures intended to make such use of the proceeds.

*Contemplation of Bankruptcy*

The testimony of Mr. Matthews, president of Steel Structures, on this point is clear:

Q.—At this time [July 29] were you contemplating filing a petition in bankruptcy for the corporation?

A.—It looked pretty evident, Mr. Brooks. Yes, sir.

\* \* \* \* \* \*

Q.—You just testified that at that time it looked imminent that you were to file a petition in bankruptcy. Had you decided to file a petition in bankruptcy on July 29?

A.—No, sir. I don't think so.

Q.—Had you consulted an attorney on July 29?

A.—Yes, sir. I had talked to an attorney prior to that time.

Q.—I believe Mr. Morrison represented you. Did you talk to Mr. Morrison about this?

A.—Yes.

Q.—Prior to that time?

A.—Yes.

Mr. Matthews further testified that, prior to July 29, 1970, he had discussed bankruptcy with Mr. Hicks, Steel Structures' auditor. Three days after the July 29 transaction, Mr. Matthews actually went to an attorney who commenced preparation of the bankrupt's petition and schedules.

Detroit Gasket insists that the purpose of the loan was to enable Steel Structures to continue in business and obtain materials from Star, its principal supplier. At one point Mr. Matthews testified that, when he executed the mortgage, he hoped to induce Star to extend further credit. The plain facts, however, form no basis for this expectation. Even after executing the two mortgages, Steel Structures still owed Star $28,000.00 on another job.[1] Star had not extended credit to Steel Structures for many months. Star, therefore, was not a major supplier of Steel Structures on July 29, 1970, as insisted by Detroit Gasket.

Although the stipulation entered into between the parties indicates insolvency of some $23,000.00 on July 29, 1970, the actual amount of insolvency was much greater. Three accounts receivable carried on Steel Structures' books in the amount of some $57,000.00 were either disputed or uncollectable. In June, 1970, its business had been seized by Internal Revenue agents but released about a week later when it was able to raise $11,000.00. Even this payment did not bring its tax account to a current status, as on July 29, 1970, it apparently owed an additional $25,000.00 for withholding and social security taxes. In 1967, 1968, and 1969 its total losses had exceeded $125,000.00. It was indebted to some one hundred twenty-five unsecured creditors with claims totaling over $90,000.00. These facts, of course, were known to Steel Structures' president, Mr. Matthews, on July 29, 1970.

It is my conclusion that, when Steel Structures entered into the transaction on July 28, 1970, it was contemplating bankruptcy. In fact, such date can be considered the "eve of bankruptcy," for preparation of the bankruptcy petition and schedules commenced within seventy-two hours thereafter.

Under Sec. 67d(3) the trustee is not required to show that the knowledge or belief of the *transferee or obligee* extended to the debtor's contemplation of liquidation or a proceeding under the Bankruptcy Act. "The statute requires only knowledge or belief 'that the debtor intended to make such use of such consideration,' i. e., that the debtor intended 'to use the consideration . . . to enable any creditor to obtain a greater percentage of his debt than some other creditor of the same class.' Such a belief or knowledge includes a realization or *surmise*, at least, that the debtor is insolvent." Collier, 14th Ed., Vol. 4, Sec. 67.38, p. 554 (emphasis added).

Clearly, the transfer in question diminished Steel Structures' assets available for payment to general creditors. Prior to the transaction, Star was an unsecured creditor in the amount of $18,045.04 (as to the transaction under consideration). After the transaction, Star's unsecured indebtedness had been reduced by $16,240.54 and Detroit Gasket was a secured creditor in that amount (plus an additional $36.00 advanced by Detroit Gasket to pay court costs in Star's lienor's suit). Star, thereafter, was also a secured creditor holding a fifth

---

1. See Claim No. 29, Referee's Claims Register (Materials apparently purchased in September, 1969, months prior to the July 29, 1970, transaction).

mortgage on the bankrupt's property in the amount of $1,804.50.[2]

The sole purpose of the transaction was to enable Steel Structures to pay Star an unsecured debt. All of the parties to the transaction knew this to be true. It was intended that the funds be used for that purpose; the funds were so used. Detroit Gasket's check was not even deposited in Steel Structures' bank account but immediately endorsed over to Star and deposited to its own account.

*Intent*

■ It cannot be seriously disputed that Steel Structures' intent was to use the consideration obtained from Detroit Gasket to enable Star to be paid a greater percentage of its debt than other creditors of the same class (unsecured creditors). It was not only the intent of Steel Structures' to use the consideration obtained for that purpose, it was the sole purpose underlying the entire transaction. The reason for executing the deed of trust was "to get Star paid and get the lien taken off" Detroit Gasket's property. (Matthews' testimony February 17, 1971.) The purpose to which the proceeds of a loan are immediately applied is in itself evidence of the intent with which it was sought. Matter of Anderson, 252 F. 272 (DCRI 1918).

"When bankruptcy or liquidation is contemplated, an intent to make even a fractional payment to a particular creditor will ordinarily satisfy this requirement of Sec. 67d(3). The reason is that in the ensuing bankruptcy or other distribution on liquidation the fractional payment will enable the creditor receiving it to have an advantage *pro tanto* over creditors whose claims were not so reduced." Collier, 14th Ed., Vol. 4, sec. 67.38, p. 553, footnote 27.

*Transferees' Knowledge*

■ Both Star and Detroit Gasket knew at the time of the transaction that Steel Structures intended to pay Star the proceeds of the advance. This fact cannot be disputed.

In December, 1969, Star's credit manager came to Steel Structures' offices and went over the Detroit Gasket account. When he saw that Steel Structures was unable to pay Star, the lien action against Detroit Gasket was commenced. After the lien notice was filed, Steel Structures' president, Mr. Matthews, promised Detroit Gasket he would "make an effort to pay [Star] which we were unable to do." Thereafter, Detroit Gasket made several inquiries of Steel Structures and was informed that they were still trying to make arrangements to pay. Detroit Gasket never threatened legal action but advised Steel Structures they were turning the matter over to their attorneys. (Mr. Matthews' testimony February 17, 1971.)

The trustee has carried the burden of proof required to avoid the transfer under Sec. 67d(3) of the Bankruptcy Act.

■ Detroit Gasket insists that, even if the court finds that all six elements of proof required to avoid the transfer under Sec. 67d(3) are satisfied, the mortgage is still valid against the trustee because of the exception provided in Sec. 67d(6) of the Bankruptcy Act—a transfer fraudulent under subdivision (d) "shall be null and void against the trustee, except as to a bona fide purchaser, lienor, or obligee for a present fair equivalent value." Collier, 14th Ed., Vol. 4, Sec. 67.41, p. 588.

Detroit Gasket overlooks the statement in Collier that, "Knowledge of the transferor's insolvency may, in conjunction with other factors, disable the transferee from asserting good faith. Indeed, the presence of *any* circumstance placing the *transferee* on inquiry as to the financial condition of the transferor may be a contributing factor in depriving the former of any claim to good faith unless

---

2. As indicated heretofore, the fifth mortgage presents a moot question only, as the proceeds derived by the sale of the property by the trustee resulted only in some $10,000.00 being realized over and above three unchallenged prior mortgages existing against the property.

investigation actually disclosed no reason to suspect financial embarrassment." (emphasis added) Collier, 14th Ed., Vol. 4, Sec. 67.41, pp. 588–590.

"Notice of facts which would incite a man of ordinary prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would disclose." Coder v. McPherson, 152 F. 951 (CA 8th 1907). "No principle of law is better settled or more universally accepted." Grandison v. National Bank of Commerce, 231 F. 800 (2d Cir. 1916), cert. denied 242 U.S. 644, 37 S.Ct. 213, 61 L.Ed. 542.

Both Star and Detroit Gasket on July 29, 1970, had knowledge of many circumstances which would place prudent business persons on inquiry as to Steel Structures' financial condition. The debt to Star was months past due, in spite of the fact that Steel Structures had been fully paid for its work by Detroit Gasket. A lien had been filed against Detroit Gasket's property and an attachment levied. Detroit Gasket's advance to Steel Structures was not in the ordinary course of business. Detroit Gasket is a manufacturing company, not a lending institution. Detroit Gasket's advance to Steel Structures was for one purpose only—to pay Star's indebtedness so that its property could be released from Star's lien and attachment.

Solvent business concerns do not permit materialmen's liens to exist for several months. It is a "red flag" of warning that cannot be ignored by those who deal with builders and contractors. Detroit Gasket and Star are sophisticated commercial enterprises and are not unaware of realities. Nor are their attorneys. Although Detroit Gasket insists that Star's lien against its property was not valid, it elected not to defend but to advance money to the bankrupt to pay Star and thereby obtain a release of its property from Star's asserted lien. Detroit Gasket thereby assumed whatever risks were involved in this unusual transaction, including the present attack on the transfer by the trustee in bankruptcy.

Voidability under Sec. 67d(3) is not restricted to instances where the transfer meets all the terms of a Sec. 60 preference. See Remington, Vol. 4, Sec. 1647, p. 153.

To avoid a transfer under Sec. 67d(3), the burden of proof is initially upon the trustee, but, if a prima facie case is made out and the transferee claims to have been a bona fide purchaser or lienor, protected as such by the statute, he has the burden of so showing. Remington, Sec. 1641, Vol. 4, p. 118. Neither Detroit Gasket nor Star introduced any proof.

Detroit Gasket also insists that the facts in the present case differ substantially from those in Dean v. Davis, supra, as Steel Structures was not motivated by a fear of criminal prosecution to get a particular creditor paid before it went under. I am not sure this statement is correct. This court must take judicial notice of Tennessee statutes.

Tennessee Code Annotated 64–1140 enacts that any contractor, subcontractor, or other person who with intent to defraud shall use the proceeds of any payment made to him on account of improving certain real property for any other purpose than to pay for labor performed on, or materials furnished by his order for, this specific improvement, while any amount for which he may be or become liable for such labor or materials remain unpaid, shall be guilty of a felony and punished accordingly. The gist of this offense is that a person, exercising a contractual relation, cannot obtain funds for a specific purpose and then divert those funds to his own use, leaving outstanding obligations for which a creditor would have a lien upon the owner's property. See State v. Overton, 193 Tenn. 171, 245 S.W.2d 188 (1951). This statute appears to be used infrequently; however, there can be no doubt but that those engaged in the contracting business are fully aware of its existence and implications.

## V

*Voidable preference under Sec. 60 of the Bankruptcy Act.*

The trustee also alleges the transfers are void as preferences under Sec. 60 of the Act. That section enacts:

"a(1). A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

"b. Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent."

 Thus, this section requires seven elements of proof before a transfer can be set aside:

(1) That the bankrupt made or suffered a transfer of his property;

(2) That the transfer was to or for the benefit of a creditor;

(3) That the transfer was for or on account of an antecedent debt;

(4) That the transfer was made while the bankrupt was insolvent;

(5) That the transfer was made within four months of bankruptcy;

(6) That the effect of the transfer was to enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class;

(7) That the creditor receiving the preference had reasonable cause to believe that the debtor was insolvent.

Star insists that the payment to Steel Structures from the proceeds of the advance from Detroit Gasket is not a preference under Sec. 60 of the Bankruptcy Act, citing Collier, 14th Ed., Vol. 3, Sec. 60.26, p. 882, as follows:

"[W]here a third person makes a loan to a bankrupt debtor specifically to enable him to satisfy the claim of a designated creditor, the proceeds never become part of the bankrupt's assets, and therefore no preference is created.[3] The rule is the same regardless of whether the proceeds of the loan are transferred directly by the lender to the creditor or are paid to the debtor with the understanding that they will be paid to the creditor in satisfaction of his claim, so long as such proceeds are clearly 'earmarked.' "

Star also cites Grubb v. General Contract Purchase Corporation, 94 F.2d 70 (CA 2d Cir. 1938); In re Henry C. Reusch & Co., Inc., 44 F.Supp. 677 (DC NJ 1942); and Inter-State National Bank of Kansas City v. Luther, 221 F.2d 382 (CA 10th Cir. 1955).

 Star is correct when there is *no* diminution of the bankrupt's assets. However, when there is a diminution of the bankrupt's estate, the transfer can be avoided. Collier, 14th Ed., Vol. 3, Sec. 26, p. 884, states—

"Of course, the fact that an alleged preferential payment was made by a third party instead of by the bankrupt *will not validate* the transaction where the bankrupt's assets were diminished thereby." (Emphasis added.)

 From time immemorial, courts of law have refused to sanction acts done by indirection, which, if performed

---

3. Dean v. Davis, supra, is cited as authority for the above quotation from Collier. In that case the Supreme Court, although holding that the mortgage was not a voidable preference under Sec. 60 of the Bankruptcy Act, held it was invalid as

a fraudulent transfer under Sec. 67e of the Bankruptcy Act. "A transaction may be invalid both as a preference and as a fraudulent transfer. It may be invalid only as a preference or only as a fraudulent transfer."

directly, would be barred by law. Courts of Bankruptcy have from the beginning placed emphasis upon the purpose and effect of a given transaction irrespective of the manner in which it was accomplished—that is, regardless of whether such transfer was a direct or indirect transaction. The principle has been firmly established that a transfer which indirectly evades the provisions of the Bankruptcy Act by effecting an undue preference to a creditor is voidable. Collier, Sec. 60.08, p. 793, cases cited under footnote 1.

In the case of National Bank of Newport v. National Herkimer County Bank, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042, the court said—

> "To constitute a preference, it is not necessary that the transfer be made directly to the creditor. It may be made to another for his benefit. If the bankrupt has made a transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it. . . . It is not the mere form or method of the transaction that the act condemns, but the appropriation by the insolvent debtor of a portion of his property to the payment of a creditor's claim, so that thereby the estate is depleted and the creditor obtains an advantage over other creditors."

See also Grandison v. National Bank of Commerce, 220 F. 981 (DCNY 1915), aff'd 231 F. 800 (CA2d 1916), cert. denied 242 U.S. 644, 37 S.Ct. 213, 61 L.Ed. 542. In this case an endorser on overdue promissory notes held by the defendant received an assignment of accounts from the bankrupt to secure him as such endorser. The court held:

> "To constitute a preference it was not necessary that the assignment of the accounts receivable should be made directly to the bank. It was enough that

the transaction which resulted in the indorsement of the renewal notes and the subsequent collection of the accounts receivable were for the benefit of the bank."

■ Detroit Gasket insists that the transfer (the execution of the fourth mortgage) is not a preference because (1) Detroit Gasket was not a "creditor" of the bankrupt and (2) the transfer was for a "present advance" and not on account of an "antecedent debt." Detroit Gasket says it was not a creditor because Star's attachment against its property was not levied within the statutory period. Tennessee Code Annotated 64–1101 et seq.; Knoxville Structural Steel Company v. Jones, 46 Tenn.App. 518, 330 S.W.2d 559 (1959).[4]

The decision of the Supreme Court in Dean v. Davis, supra, apparently answers the question of whether the transfer to Detroit Gasket (execution of the fourth mortgage) constitutes a preference under Sec. 60 of the Bankruptcy Act. In that case the mortgage was executed to Dean but the proceeds were paid to the bank.

> "The mortgage was not voidable as a preference under § 60b. Preference implies paying or securing a preexisting debt of the person preferred. The mortgage was given to secure Dean for a substantially contemporary advance. *The bank, not Dean, was preferred.* The use of Dean's money to accomplish this purpose could not convert the transaction into a preferring of Dean, although he knew of the debtor's insolvency." (Emphasis added.)

The payment to *Star*, however, in the amount of $16,240.54 from the advance made by Detroit Gasket constitutes a voidable preference under Sec. 60 of the Bankruptcy Act. Star's possession of facts concerning the bankrupt's financial condition on July 29, 1970, has heretofore been set forth. These facts clearly would lead prudent business persons to the conclusion that Steel Structures was

---

4. As heretofore pointed out, Detroit Gasket elected not to defend on this theory but to advance funds to the bankrupt to pay Star.

insolvent on that date. Collier, Vol. 3, Sec. 60.53, p. 1057. Actual knowledge of insolvency on the part of the creditor is not necessary, nor even actual belief thereof; all that is required is a reasonable cause to believe that the debtor was insolvent at the time of the preferential transfer.

The bankrupt's insolvency on the date in question is conceded. Star's debt was "antecedent." The payment to Star was made only eleven days before the bankruptcy petition was filed and only three days before an attorney was consulted and preparation of schedules commenced. Star held an unsecured debt against the bankrupt and the payment to Star enabled it to obtain a greater percentage of its debt than other creditors of the same class. Since the bankrupt's estate was depleted by the execution of the mortgage to Detroit Gasket, Star's payment cannot be validated. Collier, Vol. 3, Sec. 60.08, p. 793.

In Virginia National Bank v. Woodson, 329 F.2d 836 (4th Cir. 1964), the bankrupt's sister paid the bank $8,000.00 for the specific purpose of reducing the bankrupt's overdraft. The bankrupt thereupon assigned to his sister all his right, title, and interest in and to 45 shares (memberships) in a community swimming pool. The trustee of the bankrupt's estate sought to recover the $8,-000.00 from the bank as a preference. The court stated it was clear from the evidence and the findings of fact that the payment of $8,000.00 by the bankrupt's sister " . . . was made for the specific purpose of paying at least a portion of a particular debt owed to the bank." The court then went on to say—

> "As a general rule, such a payment, in and of itself and without more, will not create a voidable preference since there has been no diminution of the value of the estate. A different result is indicated where the making of the loan, though for the purpose of paying a specific, unsecured creditor, results

in a depletion of assets and diminution of the bankrupt's estate. We so held in Aulick v. Largent, 4 Cir., 295 F.2d 41."

The court found that the bank should be required to pay the trustee the value of the swimming pool shares (memberships) assigned and transferred to the bankrupt's sister, and the case was remanded to ascertain their value.

See also In re Sutphin and Vaughn Construction Co., 304 F.Supp. 1296 (WD Va. 1969).

### Findings and Conclusions

(1) The transfer to Detroit Gasket on July 29, 1970 (the execution of the mortgage), is void under Sec. 67d(3) and (6) of the Bankruptcy Act.

(2) The transfer to Star on July 29, 1970 (the payment of $16,240.54), is a voidable preference under Sec. 60 of the Bankruptcy Act to the extent that the bankrupt's estate was depleted; that is, the sum of $10,000.00 (the amount which would have been available to general creditors absent the July 29, 1970, transaction).

(3) The trustee's remedies for the avoidance of a Sec. 67d(3) transfer and a Sec. 60 preference are cumulative, but he is entitled to only one satisfaction. Sec. 67d(3), Bankruptcy Act.

From the findings and conclusions, more than one course of action can be directed by the court. It is my conclusion that the most logical, expeditious, and equitable course is as follows:

(1) The trustee will retain as an asset of this estate the $10,000.00 remaining from the liquidation of the property transferred to Detroit Gasket.

(2) Detroit Gasket and Star will be returned to their former status, that of July 29, 1970. Star can then proceed with its lienor's suit against Detroit Gasket, as this action is still pending in the Chancery Court of Cocke County, Tennessee.[5] Although the parties agreed

---

5. Apparently the determination of only one legal question will resolve that action; that is, whether Star's attachment was levied within the statutory period.

on July 29, 1970, that such action would be dismissed, that agreement will be negated in view of this court's determination.

(3) After their rights are determined in the lienor's suit, or by agreement, either Star or Detroit Gasket may file an amended unsecured claim against the bankrupt's estate.

(4) The funds paid Star on July 29, 1970, may be held by it pending a determination of the lienor's suit or paid to the trustee and held in escrow by him (for either Star or Detroit Gasket), as the parties may agree.

### ORDER

At Knoxville, Tennessee, in the said district, this 8 day of October, 1971.

In accordance with the foregoing findings of fact and conclusions of law, it is

Ordered, Adjudged, and Decreed,

(1) That the transfer to Detroit Gasket and Manufacturing Company by the bankrupt on July 29, 1970, is void under the provisions of Sec. 60d(3) (sic) and (6) of the Bankruptcy Act;

(2) That the transfer of $16,240.54 to Star Manufacturing Company of Oklahoma on July 29, 1970, is a voidable preference under Sec. 60 of the Bankruptcy Act to the extent of $10,000.00.

(3) That the trustee retain as an asset of this estate the $10,000.00 realized from the sale of the bankrupt's real property;

(4) That Steel Structures, Inc., the bankrupt; Detroit Gasket and Manufacturing Company; and Star Manufacturing Company of Oklahoma be returned to their former status, that of July 29, 1970;

(5) That any claim hereafter filed by Detroit Gasket and Manufacturing Company or Star Manufacturing Company of Oklahoma, as the result of the July 29, 1970, transaction, be allowed as an unsecured claim against the bankrupt's estate.

CLIVE W. BARE
Referee in Bankruptcy