**In re SPECTOR RED BALL, INC.,
et al., Debtor.**

**Bankruptcy No. 5–82–00329–K.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

April 14, 1987.

Joe Warren Jones, San Antonio, Tex., for debtors.

Lawrence A. Beck, San Antonio, Tex., for claimant Inland Diesel, Inc.

## MEMORANDUM OPINION SUSTAINING OBJECTION TO ALLOWANCE OF PROOF OF CLAIM NO. 73i AS A SECURED CLAIM FILED BY INLAND DIESEL, INC.

LARRY E. KELLY, Bankruptcy Judge.

On the 11th day of December 1986 came on to be considered an Objection to the Allowance of Claim No. 73i as a Secured Claim Filed by Inland Diesel, Inc. The Court, having reviewed the pleadings and evidence, makes the following findings:

### FINDINGS OF FACT

Prior to the time and origination and filing of its Chapter 11 case in or about April 26, 1982, the Debtor was incorporated and domiciled in the State of Texas, although licensed to do business, and was doing business, in approximately 36 other states.

Specifically, Debtor was doing business in the State of Wisconsin. Prior to April 26, 1982, the Debtor contracted for and delivered a GM tractor, number 32288, serial number THV 73 V 589667 to claimant Inland Diesel of Butler, Wisconsin, for the purpose of making repairs to the tractor. In this connection at the time of the creation of said contract and the delivery of said tractor to Inland Diesel, such tractor was located at Spector's terminal in Oak Creek, Wisconsin.

Prior to April 26, 1982, claimant Inland Diesel made and completed the repairs to said tractor in Butler, Wisconsin.

Prior to April 26, 1982, Inland Diesel, after completing said repairs to said tractor, surrendered possession of the tractor to the Debtor by returning it to Debtor's terminal and place of business in Oak Creek, Wisconsin, without having first been paid for its repair work and without having received a check or other order of payment.

On April 26, 1982, the Debtor originated and filed this Chapter 11 case without having made payment to Inland Diesel.

On October 12, 1982, Inland Diesel filed an Amended Proof of Claim alleging that the Chapter 11 estate was liable for payment of its claim, as a secured claim, in the amount of $2,256.43 for the repair work done on Spector's tractor prior to the Chapter 11.

Further, on or about October 12, 1982, Inland Diesel filed a Motion for Adequate Protection wherein it alleged that it had a lien on the above-described tractor. On January 26, 1983, the Debtor-in-Possession filed its Response to Inland Diesel's Motion for Adequate Protection, alleging that Inland Diesel had returned the tractor to Spector prior to April 26, 1982. After a hearing, at which time Inland Diesel appeared through its counsel, this Court entered an Order denying Inland Diesel's Motion for Adequate Protection. The basis for the Court's holding, as stated in the body of the Court's Order, is as follows:

"... having determined that the work was apparently accomplished by the Claimant on one (1) GM tractor, # 32288, and that such work was performed prior to the filing of these proceedings, and further that said vehicle was surrendered to the Debtors prior to these proceedings, and as a result of same, the Court is of the opinion that the Motion for Adequate Protection should be denied...."

It also appears to the Court that by subsequent Order of the Court, the tractor in question was sold and the proceeds were escrowed pending further determination of the validity of the security interest claimed by Inland Diesel, made the subject of this proceeding.

### DISCUSSION

This Court has determined that it may take judicial notice of the pleadings and orders on file in this bankruptcy case and pursuant to prior proceedings. This Court had previously determined and ruled that Inland Diesel had completed the repairs and returned Spector Red Ball, Inc.'s tractor to it before April 26, 1982, that the repair contract in question was entered

into, performed and payable in the State of Wisconsin, and that the tractor was returned without payment and without a check or other order of payment. *In re Missionary Baptist Foundation of America*, 712 F.2d 206, 211 (5th Cir.1983).

■ The key issue before this Court is whether the law of the State of Texas or of the State of Wisconsin applies. No evidence was presented to this Court with respect to the law of the State of Wisconsin. It would, however, appear to the Court clearly that if this law were known, that the law of the State of Wisconsin would apply. The debt was created between the parties in Wisconsin, the property was located in Wisconsin at all pertinent times, the contract for repairs was entered into in Wisconsin, the work was performed in Wisconsin, the bill was tendered in Wisconsin, and possession of the tractor was returned to the Debtor in the State of Wisconsin. It would appear to this Court that the law of Wisconsin is the law which should be looked at to determine the validity of the claim in question. *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 243, 91 L.Ed. 162 (1946); specifically, the Supreme Court at 67 S.Ct. page 239 of its *Vanston* opinion gave the following guidelines to be followed by a bankruptcy court in determining and deciding the proper state law to apply:

> "... obligations ... often have significant contacts in many states so that the question of which particular state's law should measure the obligations seldom lends itself to simple solutions. In determining which contact is the most significant in a particular transaction, courts can seldom find a complete solution in the mechanical formulae of the conflicts of law. Determination requires the exercise of an informed judgment in the balancing of the interests of the states with the most significant contacts in order best to accommodate the equities among the parties to the policies of those states."

Further, the Fifth Circuit, in *Woods-Tucker Leasing Corporation of Georgia v. Hutcheson-Ingram Development Company*, 642 F.2d 744 (5th Cir.1981) relying on *Vanston* held as follows on the same point:

> "Where the transaction has multi-state contacts ..., *Vanston* continues the determination of which particular state's law should apply 'requires the exercise of an informed judgment in the balancing of all of the interests of the states with the most significant contacts in order best to accommodate the equities among the parties to the policies of those states.' *Id.*, 329 U.S. at 162, 67 S.Ct. at 239."

It would appear to this Court in light of the fact that no party tendered any evidence as to the law of the State of Wisconsin at the hearing, that the Court must consider the issue of judicial notice. Judicial notice is defined generally as a court's acceptance of the truth of a matter without formal evidentiary proof. 13 Villanova L.Rev. 528, 530 (1969), "The presently extending concept of judicial notice."

It is fundamental that one of a judge's primary functions is to decide what substantive law should be applied to the facts of the case before him. Ordinarily, in the course of the law of the forum, the judge finds the law through judicial notice. *Saffold v. McGraw-Edison Co.*, 566 F.2d 621, 623 (8th Cir.1977) (Federal courts *must* take judicial notice of the statutory and common law of any state of the union without pleading or proof.) (emphasis added).

Opposing counsel are usually relied upon to call to the court's attention, by argument or brief, to the controlling legal material. On occasion, a judge may conduct an independent investigation. *See, e.g. United States v. Jacobs*, 547 F.2d 772 (2d Cir. 1976), *cert. dismissed*, 436 U.S. 31, 98 S.Ct. 1873, 56 L.Ed.2d 53 (1978). In any event, it appears to this Court that no formal evidentiary requirements apply, flexibility and informality prevail and the only limitation are those inherent in the adversary system of keeping the other side informed. In the federal courts, proof of sister-state law has customarily been assimilated to proof of domestic law. In the case of *Schultz v.*

*Tecumseh Products,* the Sixth Circuit noted as follows:

"The states of the Union are not foreign to the United States or to its courts. Such courts are required to take judicial notice of the statute and case law of each of the states. (Citation omitted). The law of any state of the Union, whether depending upon statutes or upon judicial opinions is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof."

*Schultz v. Tecumseh Products,* 310 F.2d 426, 433. See also *Steel Structures, Inc. v. Star Manufacturing Co.,* 466 F.2d 207, 216 (6th Cir.1972).

■ Rule 201 is the only evidence rule that deals with judicial notice in federal courts. Its scope is narrow in that it deals only with adjudicative facts. It does not deal with judicial notice of law nor with legislative facts. Therefore, it is apparent that the above principles apply in this Court and this Court should take judicial notice of the law of the State of Wisconsin.

This Court finds, therefore, that the law of Wisconsin relating to possessory mechanic's liens is to be found in Section 779.41 of the Wisconsin revised statutes and provides in pertinent part as follows:

"(1) Every mechanic and every keeper of a garage or shop, and every employer of a mechanic who transports, makes, alters, repairs or does any work on personal property at the request of the owner or legal possessor of the personal property, has a lien on the personal property for the just and reasonable charges therefor ... and may retain possession of the personal property until the charges are paid."

The above statute was provided in the post-trial brief in support of the objection to the allowance of the claim filed by Inland Diesel, Inc. and no additional authorities have been submitted by either party. Based upon the appropriateness of taking judicial notice, the Court has made a review and finds no additional law which would otherwise define the lien rights of the mechanic in the State of Wisconsin as applied to the facts of this case.

■ It would therefore appear that a garageman who surrenders possession of the personal property upon which he asserts a lien, waives and relinquishes any such lien. In *Susenbrenner v. Mathews,* 48 Wis. 250, 3 N.W. 599 (1879), the Wisconsin Court of Appeals held and explained as follows:

"The essence of a lien, in such cases, is possession. A lien cannot survive possession; and except in case of fraud, and perhaps mistake, such a lien cannot be restored by resumption of possession. A lien is a right to hold possession of another's property for the satisfaction of some charge attached it it. The essence of the right as possession, and whether that possession be of officers of the law or of the person who claims the right of lien, the chattel on which the lien attaches is equally regarded as in the custody of the law. A lien is neither a jus ad rem nor a jus in re, but a simple right of retainer. The voluntary parting with the possession of the goods will amount to a waiver or surrender of a lien; for, as it is a right founded upon possession, it must ordinarily cease when the possession ceases."

This Court has found no other law which would appear to control and based upon its conclusion that this Court must, when available, apply the law of the state with the most significant contacts, in this instance determined to be the State of Wisconsin, this Court finds that the lien had to be possessory in order to be perfected. As this Court has already found that the possession was voluntarily relinquished pre-petition and no other facts relating to fraud or mistakes having been presented to the Court, this Court is of the opinion that the claim of Inland Diesel, Inc. should be disallowed as a secured claim. It should, however, be allowed in its full amount as an unsecured claim in this case.

An Order in conformity with this Memorandum Opinion will be entered this date.